IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| PRIDE ENTERPRISES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-330-GMS |
| | ) | |
| LEWES STEEL SERVICE et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

I. INTRODUCTION

On May 6, 2009, the plaintiff, Pride Enterprises, Inc. ("Pride") filed this diversity action against defendants Lewes Steel Service ("Lewes Steel"), Star Building Systems ("SBS") and Scott Ayars ("Ayars") for breach of contract. (D.I. 1.) Presently before the court is defendant SBS' motion to dismiss or, in the alternative, motion for summary judgment, on the ground that venue in this court is precluded by a valid forum selection clause. (D.I. 8.) For the reasons that follow, the court will grant the defendant's motion.

II. BACKGROUND

Pride is incorporated in Pennsylvania, with its principal place of business in Pennsylvania. (D.I. 1 ¶ 1.) Lewes Steel is a Delaware corporation with its principle place of business in Delaware. (Id. at ¶ 2.) SBS is also a Delaware corporation with its principal place of business in Texas. (Id. at ¶ 3.) Ayars is a natural person who is a citizen of Delaware. (Id. at ¶ 4.) Ayars is also the principal owner of Lewes Steel. (Id.)

The dispute in this case arises from a construction contract (the "Prime Contract") awarded to Pride by the Department of the Army. (Id. at ¶ 8.) SBS was the lead designer and fabricator of one of the main components for the Prime Contract, a pre-engineered metal building (the "Building"). (Id. at ¶ 9-10.) Pride alleges, however, that because SBS would not contract directly with prime contractors, it was required to contract with an "SBS-authorized steel erection subcontractor," namely, Lewes Steel. (Id. at ¶ 10.) Lewes Steel was then to contract with SBS to design and fabricate the Building. (Id.) In October 2007, Pride sent Lewes Steel a Letter of Intent. (Id. at ¶ 13.) Lewes Steel commenced work shortly after receiving the Letter of Intent. (Id.) In February 2008, Pride sent Lewes Steel a proposed subcontract form. (Id.) Although Pride and Lewes Steel had not yet entered into a subcontract, Pride alleges that all parties agreed the Building would be installed by July 15, 2008. (D.I. 1 at ¶ 14.)

Pride alleges that, during the course of their business dealings, SBS and Lewes Steel's failure to provide accurate and proper submittals caused the project to fall behind schedule. (Id. at ¶ 16-18.) By mid-summer 2008 numerous delays already had occurred, yet Lewes Steel still had not signed the proposed subcontract. (Id. at ¶ 20.) Pride further alleges that, in September 2008, it was forced to sign an alternate subcontract proposed by Lewes Steel in order to prevent further delay in completing the Prime Contract. (Id.) In addition, in or about January 2009, Lewes Steel requested assistance from Pride because of its financial difficulties. (Id. at ¶ 22.) Pride alleges that it complied with these demands in order to prevent further delay. (Id.)

According to Pride, in December 2008, SBS contacted it personally and requested that Pride sign a "credit application." (Id. at ¶ 23.) Pride avers that, again, it was forced to sign the credit application to ensure that there were no further delays. (Id.) The Building components were

delivered on January 17, 2009. (Id. at ¶ 24.) The Building, which was to be erected five weeks after delivery, remained unfinished as of March 9, 2009, when Lewes Steel abandoned the project. (Id. at ¶ 25-26.) At that time, Pride hired a new group of subcontractors to complete the project and erect the building. (Id. at 26.)

As a result, Pride alleges that the project was completed 145 days after the completion date required by the Prime Contract. (Id. at ¶ 28.) Pride denies that it has any direct obligation to pay SBS for the components that SBS delivered. (Id. at ¶ 37.) Furthermore, Pride alleges that any costs of the components and the Building that it may be required to pay are offset by the costs that SBS caused as a result of the numerous delays. (Id. at ¶ 40.)

Pride filed its complaint on May 6, 2009. The complaint contains four counts: breach of contract against Lewes Steel (Count I), a declaratory judgment against SBS (Count II), contribution and indemnity against Lewes Steel (Count III), and piercing the corporate veil against Ayars (Count IV). (D.I. 1.) On July 14, 2009, SBS filed a motion to dismiss the declaratory judgment claim for improper venue. (D.I. 8.) In its motion, SBS contends that this court lacks jurisdiction, because Pride agreed to a forum selection clause when it signed the credit application, which states that the parties will litigate all disputes arising out of that agreement in Houston, Harris County, Texas. (Id. at 8.)

On August 14, 2009, Pride filed a brief in opposition, arguing, among other things, that the declaratory judgment claim is a Miller Act dispute, which should be resolved in this court because "[v]enue in a Miller Act claim is located exclusively in the federal district court situated in the district in which the federal project is located." (D.I. 11 at 16.)

On January 21, 2010, SBS filed a complaint alleging violations of the Miller Act against Pride's surety, Arch Insurance Company. The allegations of SBS' complaint focus on the contract awarded to Pride, SBS' delivery of the components for the Building, and Pride's refusal to pay the invoice for the components.

On January 28, 2010, Pride filed a letter informing the court of the related Miller Act complaint that SBS filed. As a result, the court issued an Order (D.I. 15), on February 23, 2010, directing the parties to file supplemental briefs on the motion to dismiss.

### III. STANDARD OF REVIEW

Courts treat a motion to dismiss based upon enforcement of a forum selection clause as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298-99 (3d Cir. 2001) ("Our holding in *Crescent* [*Int'l Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988)] leaves no doubt that a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum."). Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the court looks at the facts most favorable to the non-moving party. *See, e.g. Calloway v. Green Tree Servicing, LLC,* 607 F. Supp. 2d 669, 673 (D. Del. 2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* --- U.S. ---, 129 S. Ct. 1937, 1950 (2009). If they do not, the court should dismiss the complaint. *Id.*[1]

---

[1] SBS moves in the alternative for the court grant it summary judgment, because it has attached matters outside the pleadings to its motion to dismiss. Generally, a court may not consider material outside of the pleadings when deciding a motion to dismiss pursuant to Rule

4

## IV. DISCUSSION

In its motion to dismiss, SBS contends that this action is precluded, because the parties entered into a valid forum selection clause.[2] More specifically, SBS contends that the District of Delaware is not the proper venue, because Pride agreed to a forum selection clause when it signed the credit application, which states that the parties will resolve all disputes in Houston, Harris County, Texas. SBS further argues that Pride's complaint fails to allege any facts that would remove

---

12(b)(6). The court makes an exception, however, when a document becomes "integral to or explicitly relied upon in the complaint." *In re Burlington Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). In the present case, Pride's complaint relies upon the credit application. Moreover, the forum selection clause at issue is part of the credit application between Pride and SBS. Thus, the court will consider the credit application in determining whether to grant SBS' motion to dismiss. The court will not consider any other supporting documentation and declines to accept the parties' invitation to convert the motion to dismiss into a motion for summary judgment.

[2] The forum selection clause of the credit application provides the following:

> Buyer hereby acknowledges, stipulates and agrees that (i) any and all claims, actions, proceedings or causes of action relating to the validity, performance, interpretation, and/or enforcement hereof shall be submitted exclusively to a court of competent jurisdiction in Houston, Harris County, Texas, (ii) to the maximum extent practicable, this Agreement will be deemed to call for performance in Houston, Harris County, Texas, (iii) **Buyer irrevocably submits itself to the exclusive jurisdiction of the State and Federal Courts in Houston, Harris County, Texas**, (iv) service of process may be made upon it in any legal proceeding in connection with this Agreement or any other agreement as provided by Texas Law, (v) Buyer irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the exclusive venue of any litigation arising out of or in connection with the Agreement or any other agreement or transaction brought in any such court, (vi) Buyer irrevocably waives any claims that litigation brought in any such court has been brought in an inconvenient forum, and (vii) It irrevocably consents to the service of process out of any of the aforementioned courts by the mailing of copies thereof by Certified Mail, Return Receipt Requested, postage prepaid, at its address set forth herein.

(D.I. 8, Ex.3 at 9) (emphasis added).

the presumptive validity attached to the forum selection clause.

Conversely, Pride argues that the court should find the forum selection clause unenforceable, because SBS procured it by means of economic duress. Pride further contends that Delaware is the proper forum, because Houston, Harris County, Texas is an unreasonably inconvenient jurisdiction. Pride supports this argument by noting that it is a Pennsylvania corporation, and both the project and subcontractor are located in Delaware. Finally, Pride argues that this case is really a Miller Act dispute, which should be resolved in this court because "[v]enue in a Miller Act claim is located exclusively in the federal district court situated in the district in which the federal project is located." (D.I. 11 at 16.) The court addresses each of these arguments in turn.

### A.     The Validity of the Forum Selection Clause

A forum selection clause in a signed agreement between two parties is generally enforced. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983). A court may not enforce a presumptively valid forum selection clause, however, if the objecting party can establish "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Id.* In order to prevent the court from enforcing a valid forum selection clause, the objecting party must overcome the great weight that it is entitled. *Id.* In the present case, Pride argues that the forum selection clause of the credit application is invalid for two reasons: (1) SBS procured it through economic duress; and (2) enforcement would result in litigation in a jurisdiction that is unreasonable.

1. *Fraud or Overreaching*

In order to invalidate a forum selection clause based on fraud, the objecting party must show that it justifiably relied on a fraudulent or material misrepresentation by the other party. *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 20 (1st Cir. 2009). Invalidating a forum selection clause for overreaching requires proof of "one party's unfair exploitation of its overwhelming bargaining power or influence over the other party." *Id.* at 21. The opposing party must show that this bargaining power has been exploited. In other words, a mere showing of inequality between the two parties will not do. *Id.* Furthermore, the fraudulent conduct or overreaching must have induced assent to the forum selection clause itself, not the contract as a whole. *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997).

Here, Pride contends that SBS procured its signature to the credit application through economic duress. Although it is not clear to the court whether Pride is claiming that the economic duress it suffered was the result of fraud or overreaching on the part of SBS, the court finds the allegation of economic duress more akin to a claim of overreaching, as opposed to a claim of fraud, and will treat it as such.[3] Pride's overreaching defense fails for two reasons. First, neither the complaint nor Pride's answering brief states that SBS' conduct in including the forum selection clause in the credit application amounted to overreaching. Instead, Pride focuses its allegations and arguments on its signing of the entire credit application. Further, Pride merely states that it was

---

[3] Pride's answering brief in opposition sets forth the three grounds for invalidating a forum selection clause, and then states that the SBS has violated two of those grounds. (D.I. 11 at 10.) Pride, however, does not state which two grounds SBS allegedly violated. Instead, it discusses the law of economic duress, which is not one of the three articulated grounds. It is also noteworthy that Pride's complaint fails to include any facts or allegations regarding economic duress.

forced to sign the credit application to ensure the completion of the Building when SBS left it with "no viable economic option." (D.I. 1 at ¶ 23.) In other words, Pride's complaint provides no factual details that demonstrate to the court that SBS specifically exploited its bargaining power to ensure that the forum selection clause was part of the credit application.

Second, Pride's conduct during the business relationship between the parties contributed significantly to the underlying circumstances. Although performance by Lewes Steel began in October 2007, Pride neglected to obtain a signed subcontract from the company. Pride then agreed to sign the alternate subcontract proposed by Lewes Steel after Lewes Steel had begun its performance. Despite several delays throughout the project – the first of which occurred "almost immediately" (D.I. 1 ¶ 16) – Pride remained committed to dealing with Lewes Steel. Therefore, it would appear that Lewes Steel's delays, along with Pride's continued acquiescence, contributed to SBS' direct involvement and the subsequent credit application. As a result, the court is not willing to conclude that the forum selection clause in the credit application was the result of overreaching by SBS.

    2.    *Convenience of the Forum*

As previously mentioned, Pride argues that enforcement of the forum selection clause would result in litigation in a jurisdiction that is unreasonable. The burden faced by litigants in proving the unreasonableness of a forum selection clause is a heavy burden, and requires more than just a showing of financial constraints. *Beck v. The CIT Group/Credit Fin., Inc.*, Civ. No. 94-5513, 1995 WL 394067, *7 (E.D. Pa. June 29, 1995). That is, a forum selection clause should be enforced unless "trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all practical purposes be deprived of [its] day in court." *Dayhoff, Inc. v. H.J. Heinz, Co.*, 86

F.3d 1287, 1297 (3d Cir. 1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).

Here, Pride has failed to make the strong showing that it must to invalidate the forum selection clause. In its answering brief to SBS' motion to dismiss, Pride argues that litigation in a Houston, Texas forum would be "manifestly unreasonable" because it is a Pennsylvania corporation. (D.I. 11 at 15.) Pride's only additional support for its argument is that both the project and installer it contracted with are located in Delaware. Pride, however, does not point to any particular hardships that would make litigation in Houston, Texas unreasonably inconvenient, especially given the fact that most pretrial matters, such as discovery, can be conducted at any location convenient to the parties. Accordingly, the court will not invalidate the forum selection clause because it requires litigation in a jurisdiction that is "inconvenient" to Pride.

### B. The Miller Act Claim

Finally, Pride argues that the court should deny SBS' motion to dismiss, because this case is really a Miller Act dispute, which should be resolved in this court according to the Miller Act's venue provision. The court disagrees.

The venue provision of the Miller Act provides, in pertinent part: "A civil action brought under this subsection must be brought--(A) in the name of the United States for the use of the person bringing the action; and (B) in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. § 3133(b)(3)(B). At first blush, the language of the venue provision appears to mandate strict conformance. Judicial interpretation of the venue provision, however, holds otherwise. While the Third Circuit has yet to address the issue, four other circuits have addressed forum selection clauses

that conflict with the Miller Act's venue provision. All four circuits have held that the Miller Act's venue provision is subject to contractual waiver by a valid forum selection clause. *See United States ex rel. B&D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co.*, 70 F.3d 1115 (10th Cir. 1995) (holding that a valid forum selection clause supersedes the Miller Act's venue provision); *United States ex rel. Pittsburgh Tank & Tower, Inc. v. G & C Enterprises, Inc.*, 62 F.3d 35, 36 (1st Cir. 1995) (finding that a forum selection clause prevailed when it conflicted with the venue designated by the Miller Act); *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1233 (8th Cir. 1995) (finding that the forum selection clause overrides the Miller Act's venue requirements); *In re Fireman's Fund Ins. Cos.*, 588 F.2d 93, 95 (5th Cir. 1979) (holding that the Miller Act's venue provision may be varied by contract). The court is persuaded by this authority and concludes that the forum selection clause in the credit application overrides the Miller Act's venue provision and, therefore, militates in favor of granting the motion to dismiss.

## VI. CONCLUSION

For the aforementioned reasons, the court concludes that the forum selection clause in the credit application is valid, and that it overrides the Miller Act's venue provisions. Accordingly, the court will grant SBS' motion to dismiss.

Dated: March 31, 2010

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRIDE ENTERPRISES, INC. | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 09-330-GMS |
| LEWES STEEL SERVICE et al., | ) |
| Defendants. | ) |

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Star Building Systems' Motion to Dismiss for Improper Venue (D.I. 8) is GRANTED.

Dated: March 31, 2010

CHIEF, UNITED STATES DISTRICT JUDGE